**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| UROGYNECOLOGY SPECIALIST OF FLORIDA LLC,<br><br>Plaintiff,<br>v.<br><br>SENTINEL INSURANCE COMPANY, LTD.,<br>Defendant. | )<br>)<br>) NO.: 6:20-cv-1174-Orl-22EJK<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT SENTINEL INSURANCE COMPANY'S**
**MOTION TO DISMISS UNDER RULE 12(b)(6) AND MEMORANDUM IN SUPPORT**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF FACTS .............................................................................................. 2

    A. The Policy............................................................................................................... 2

    B. Plaintiff's Allegations............................................................................................. 3

III. ARGUMENT ................................................................................................................... 4

    A. Governing Legal Standards .................................................................................... 4

        1. Motion to Dismiss ...................................................................................... 4

        2. The Plain and Unambiguous Terms of the Virus Exclusion Govern.................... 5

    B. The Virus Exclusion Bars Coverage for All of Plaintiff's Claims.............................. 6

    C. The Limited Virus Coverage Does Not Apply............................................................ 9

    D. Plaintiff's Breach of Contract Claim Fails Because There is No Coverage ............. 10

IV. CONCLUSION.............................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alea London Ltd. v. Rudley*, No. Civ.A 03-CV-1575, 2004 WL 1563002 (E.D. Pa. July 13, 2004) ................................................................................................................................ 7

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) ............................................... 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 4

*Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29 (Fla. 2000) ..................................................... 5

*Berg v. N.Y. Life Ins. Co.*, 88 So. 2d 915 (Fla. 1956) ................................................................... 8

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997) ....................... 4

*Certain Underwriters at Lloyds of London v. Creagh*, 563 Fed. App'x 209 (3d Cir. 2014) .......... 7

*Clarke v. State Farm Florida Insurance*, 123 So. 3d 583 (Fla. 4th DCA 2012) ........................... 7

*Day v. Taylor,* 400 F.3d 1272 (11th Cir. 2005) ............................................................................ 5

*Diatz Fritz Grp, Inc. v. Westfield Ins. Co.*, 2020 WL 2735332 (M.D. Fla. May 26, 2020) .......... 11

*Dimmitt Chevrolet, Inc. v. Se. Fid. Ins. Corp.,* 636 So. 2d 700 (Fla. 1993) .................................. 5

*Eisenberg v. Southern Ins. Co.,* 2009 WL 3667086 (S.D. Fla. 2009) ......................................... 11

*Gavrilides Mgmt. Co. vs. Mich. Ins. Co.*, Case No. 20-258-CB-C30 (Mich. Circuit Court, Ingham County, July 1, 2020) ............................................................................................... 8, 9

*Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc.,* 874 So. 2d 26 (Fla. 2d DCA 2004) ...................... 5

*Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.*, 757 F.2d 1172 (11th Cir. 1985) ......................... 5

*Harris v. Voyager Indem. Ins. Co.*, No. 8:05-cv-2011-T24-TBM, 2007 WL 42854 (M.D. Fla. Jan. 4, 2007) ............................................................................................................................ 8

*Hekker v. Ideon Grp., Inc.*, No. 95–681–Civ–J–16, 1996 WL 578335 (M.D. Fla. Aug. 19, 1996) 4

*Houston Specialty Ins. Co. v. Vaughn,* 2016 WL 7386957 (M.D. Fla. Aug. 4, 2016) ................... 4

*Lambi v. Am. Mut. Ins. Co.*, No. 4:11-cv-906, 2012 WL 2049915 (W.D. Mo. June 6, 2012) ....... 7

*Lubell and Rosen LLC, v. Sentinel Ins. Co., Ltd.*, No. 0:16-cv-60429-WPD, 2016 WL 8739330 (S.D. Fla. June 10, 2016) ................................................................................................ 5, 8

*Mich. Battery Equip., Inc. v. Emcasco Ins. Co.*, 892 N.W.2d 456 (Mich. Ct. App. 2016) ....... 8, 10

*Ministerio Evangelistico Int'l v. United Specialty Ins. Co.*, 2017 WL 1363344 (S.D. Fla. Apr. 5, 2017) ...................................................................................................................................... 11

*Morette Co. v. S.-Owners Ins. Co.*, 301 F. Supp. 3d 1175 (N.D. Fla. 2017) .................................. 4

*Mt. Hawley Ins. Co. v. Adams Homes, LLC*, No. 3:13cv48-WS, 2014 WL 11512199 (N.D. Fla. Dec. 16, 2014) ........................................................................................................................... 8

*Neitzke v. Williams*, 490 U.S. 319 (1989) ..................................................................................... 4

*Paulucci v. Liberty Mut. Fire Ins. Co.*, 190 F. Supp.2d 1312 (M.D. Fla. 2002) ............................ 6

*Provau v. State Farm Mut. Auto. Ins. Co.*, 772 F.2d 817 (11th Cir. 1985) .................................... 5

*Remedios v. Nat'l Fire & Marine Ins. Co.*, 2019 WL 7956170 (S.D. Fla. Aug. 29, 2019).......... 11

*Sentinel Ins. Co., Ltd. v. Monarch Med. Spa, Inc.*, 105 F. Supp. 3d 464 (E.D. Pa. 2015).............. 7

*Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, No. 20-cv-3311 (S.D.N.Y. May 14, 2020).. 9

*Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 412 F.3d 1224 (11th Cir. 2005) ...... 5

*State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160 (Fla. 2006) ........................................ 5

*State Farm Mut. Ins. Co. v. Pridgen*, 498 So. 2d 1245 (Fla. 1986) ............................................... 5

*Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co.*, 157 F.3d 843 (11th Cir. 1998) ............ 5

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009) ..................................................... 10

**Statutes**

Fla. Stat. § 86.011 .......................................................................................................................... 3

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Middle District of Florida Local Rule 3.01, Defendant Sentinel Insurance Company, Ltd. ("Sentinel") respectfully moves to dismiss the Complaint of Plaintiff Urogynecology Specialist of Florida LLC ("Plaintiff")[1] for failure to state a claim upon which relief can be granted.

## I.     INTRODUCTION

Plaintiff, a gynecology practice, seeks to recover from Sentinel for alleged losses resulting from the COVID-19 pandemic.  *See* Compl. ¶¶ 13, 31.  Plaintiff claims that it suffered a loss "when it was forced to limit its services in an effort to 'help stop the spread' of COVID-19".  *See* Compl. ¶ 42.  Plaintiff seeks for its property insurer, Sentinel, to cover its virus-related losses.

Sentinel does not dispute that measures to slow the spread of the novel coronavirus have upended lives and resulted in broad disruption to the economy.  But the unprecedented fallout from a global pandemic does not provide a basis to override the plain terms of an insurance contract.  Here, Plaintiff's policy includes a "'Fungi,' Wet Rot, Dry Rot, Bacteria and Virus" Exclusion ("Virus Exclusion") that states Sentinel "will not pay for loss or damage caused directly or indirectly by . . . [p]resence, growth, proliferation, spread or any activity of . . . virus."  *See* Doc. 5, Ex. 1 at 141.  "Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."  *See id.*

The novel coronavirus (SARS-CoV-2) is a "virus" within the meaning of this exclusion, and the business losses Plaintiff alleges were "caused directly or indirectly" by it.  Indeed, Plaintiff admits that it seeks coverage for alleged "COVID-19 related injuries, damages and

---

[1] For the purposes of this Motion only, Sentinel assumes, as it must, the truth of Plaintiff's well-pleaded allegations in the Complaint.

1

losses," *see* Compl. ¶ 31, because its gynecology practice was "directly affected by Governor DeSantis's order", *id.* ¶ 35, which was issued "as a result of COVID-19." *See id.* ¶ 32. Further, Plaintiff admits it "submitted its claim" for alleged coverage under the Policy, "due to the COVID-19 pandemic." *See id.* ¶ 40. Accordingly, the Virus Exclusion bars coverage.

Both claims for relief are premised on the Policy providing coverage for Plaintiff's virus-related losses. Because there is no coverage, Sentinel respectfully requests that this Court dismiss the Complaint in its entirety with prejudice.

## II.   STATEMENT OF FACTS

### A.   The Policy

Sentinel issued a Business Owner's Policy bearing No. 21 SBA BX5636 to Plaintiff with a policy period of June 19, 2019 to June 19, 2020 ("the Policy"). *See* Notice of Filing, Exhibit 1, Doc. 5. The Policy provides that Sentinel "will pay for direct physical loss of or physical damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss." Doc. 5, Ex. 1 at 36. With respect to the additional coverage for business income:

> [Sentinel] will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises" . . . caused by or resulting from a Covered Cause of Loss.

Doc. 5, Ex. 1 at 45. The Policy defines "Covered Causes of Loss" as "risks of direct physical loss", unless the loss is excluded or limited in other Policy provisions. Doc. 5, Ex. 1 at 37.

As noted, the Policy expressly excludes losses caused by a virus. The Virus Exclusion provides:

> [Sentinel] will ***not pay*** for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
>
> (1) ***Presence, growth, proliferation, spread or any activity of*** "fungi", wet rot, dry rot, bacteria or ***virus***.

2

*See* Doc. 5, Ex. 1 at 141 (emphasis added).  The exclusion has two exceptions that are not applicable here.[2]

### B.      Plaintiff's Allegations

Plaintiff seeks coverage for business income losses that it allegedly sustained in connection with the COVID-19 virus.  Plaintiff alleges that it sustained loss or damages as a result of the COVID-19 pandemic.  *See* Compl. ¶ 13.  Plaintiffs alleges that "[a]s a direct result of this pandemic, Urogynecology Specialist of Florida LLC's property has been damaged and cannot be used for its intended purpose."  Compl. ¶ 14.  Plaintiff claims that it "suffered a direct physical loss when it was forced to limit its services in an effort to *'help stop the spread' of COVID-19*".  *See* Compl. ¶ 42 (emphasis added).  Plaintiff alleges that it was affected by the following governmental actions in Florida:

- "On or about March 1, 2020, Florida Governor DeSantis issued Executive Order No.: 20-51 and declared a state of emergency in Florida *as a result of COVID-19.*"  Compl. ¶ 32 (emphasis added).

- "On or about March 20, 2020, Florida Governor DeSantis issued Executive Order No.: 20-72 'Non-essential Elective Medical Procedures' limiting all 'non-essential' and elective medical and surgical procedures."  Compl. ¶ 33.

The Complaint asserts two causes of action:  (1) breach of contract and (2) a declaration under Fla. Stat. § 86.011 that the Policy provides certain coverage.

---

[2] The two exceptions are (1) when the virus results from fire or lightning or (2) when certain limited additional coverage is applicable.  The limited additional coverage "only applies" if, among other conditions, the virus results from certain specified causes of loss not at issue here (*e.g.*, windstorm, hail, volcanic action) or from an equipment breakdown.  *See* Doc. 5, Ex. 1 at 141.

### III.   ARGUMENT

#### A.   Governing Legal Standards

##### 1.   Motion to Dismiss

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A complaint that does not contain sufficient factual matter, accepted as true, to state a claim plausible on its face is subject to dismissal." *Houston Specialty Ins. Co. v. Vaughn,* 2016 WL 7386957, at *3 (M.D. Fla. Aug. 4, 2016) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Houston Specialty Ins. Co. v. Vaughn,* 2016 WL 7386957, at *3 (M.D. Fla. Aug. 4, 2016) ("dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the complaint's factual allegations, a dispositive legal issue precludes relief").

On a motion to dismiss, the Court may properly consider documents attached to the motion without converting the motion into one for summary judgment if the documents are integral to the complaint and their authenticity is not challenged. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *see also, e.g., Hekker v. Ideon Grp., Inc.*, No. 95–681–Civ–J–16, 1996 WL 578335, at *2 (M.D. Fla. Aug. 19, 1996) (citations omitted) ("[W]here documents are quoted in or are central to plaintiff's complaint, and the plaintiff has failed to provide the entire document with the complaint, the defendant may submit, and the court may consider, those documents in connection with a motion to dismiss."); *Morette Co. v. S.-Owners Ins. Co.*, 301 F. Supp. 3d 1175, 1183 (N.D. Fla. 2017) (citing *Day v. Taylor,*

4

400 F.3d 1272, 1276 (11th Cir. 2005)) (extrinsic document not physically attached to the complaint may be incorporated into it by reference if central to the complaint).

Here, Plaintiff's entire lawsuit is premised on the Policy, and Plaintiff repeatedly and explicitly references the Policy throughout the Complaint. Therefore, the Court may properly consider the language of the Policy on a Rule 12(b)(6) motion.

### 2. The Plain and Unambiguous Terms of the Virus Exclusion Govern

Under Florida law,[3] interpretation of an insurance policy is a question of law for the court. *Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co.*, 157 F.3d 843 (11th Cir. 1998); *Dimmitt Chevrolet, Inc. v. Se. Fid. Ins. Corp.,* 636 So. 2d 700, 701 (Fla. 1993). "[I]nsurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). "In construing an insurance policy, courts should read the policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc.,* 874 So. 2d 26, 30 (Fla. 2d DCA 2004). The court is not permitted "to rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *State Farm Mut. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986) (citations and quotations omitted). Where, as here, an exclusion applies to bar coverage, the court need not address coverage under other policy provisions. *Lubell and Rosen LLC, v. Sentinel Ins. Co.,* Ltd., No.

---

[3] "The construction of insurance contracts is governed by substantive state law." *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 412 F.3d 1224, 1227 (11th Cir. 2005) (quoting *Provau v. State Farm Mut. Auto. Ins. Co.*, 772 F.2d 817, 819 (11th Cir. 1985)). Florida applies the traditional rule of *lex loci contractus* to insurance contracts, such that "the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006) (citation omitted); s*ee also Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985). The Policy was issued to Plaintiff in Florida covering its premises located in Florida. Therefore, Sentinel assumes Florida law applies for purposes of this motion.

0:16-cv-60429-WPD, 2016 WL 8739330, at *4 (S.D. Fla. June 10, 2016) (unnecessary to address whether there was physical loss or damage from noxious odors because such odors arose from a sewer backup, and the sewer water exclusion applied).

### B. The Virus Exclusion Bars Coverage for All of Plaintiff's Claims

The Virus Exclusion unambiguously bars coverage for Plaintiff's claims. The Policy provides that Sentinel "will not pay for loss or damage caused directly or indirectly by the presence, growth, proliferation, spread or any activity of . . . virus." Doc. 5, Ex. 1 at 141. This exclusion applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss."[4]  *Id.*

Plaintiff's allegations fall squarely within the exclusion. The novel coronavirus SARS-CoV-2 undisputedly is a virus.  SARS-CoV-2 is an abbreviation for the full name of the virus, severe acute respiratory syndrome *coronavirus* 2.  Plaintiff refers to SARS-CoV-2 as "COVID-19" in the Complaint.  *See* Compl. ¶ 13 ("On or about March of 2020, the United States of America became infected with SARS-CoV-2 (commonly and hereinafter referred to as 'COVID-19') which resulted in a nationwide pandemic."). Plaintiff's losses undisputedly were caused by the virus. Plaintiff claims that it "suffered a direct physical loss when it was forced to limit its services in an effort *to 'help stop the spread' of COVID-19*" (s*ee* Compl. ¶ 42) due to governmental orders that were issued "*as a result of COVID-19*." *See id.* ¶ 32 (emphasis added). Further, "Plaintiff believes the Policy provides coverage for all of its ***COVID-19 related***

---

[4] This language serves to exclude losses caused in part by a virus regardless of whether another cause contributes concurrently to the loss. Florida courts enforce such anti-concurrent clauses in accordance with their plain language and recognize that such clauses unambiguously exclude coverage where the excluded peril is one cause of the loss. *See Paulucci v. Liberty Mut. Fire Ins. Co.*, 190 F. Supp.2d 1312, 1320 (M.D. Fla. 2002) ("[I]n the instant case the anti-concurrent cause language of the [insurance] policy has been agreed to by the contracting parties and must be applied.").

injuries, damages, and losses." *See id.* ¶ 31 (emphasis added). And, Plaintiff alleges it "submitted its claim" for alleged coverage under the Policy, "due to the COVID-19 pandemic." *Id.* ¶ 40. Simply put, the Complaint makes clear that the coronavirus – a virus – has caused Plaintiff's alleged losses.

Florida courts do not hesitate to enforce policy provisions excluding coverage for viruses. In *Clarke v. State Farm Florida Insurance*, for example, the homeowner's policy at issue excluded from the definition of bodily injury coverage "communicable . . . virus . . . transmitted by any insured to any other person" and "the exposure of any such . . . virus by any insured to any other person." 123 So. 3d 583, 584 (Fla. 4th DCA 2012). The policyholder sought coverage when a third-party asserted a claim against him for the transmission of Herpes Simplex Virus. *Id.* at 583. The "claims fell outside the plain language that defined the scope of the policy's coverage" and, therefore, "the trial court correctly concluded that State Farm did not owe a duty of defense of indemnification." *Id.* at 584. There, like here, "the complaint alleged injuries expressly excluded by the policy." *Id.*[5]

Courts applying Florida law routinely give unambiguous exclusions their straightforward application in analogous situations. *See, e.g.*, *Mt. Hawley Ins. Co. v. Adams Homes, LLC*, No.

---

[5] Courts in other jurisdictions are in accord. *See, e.g.*, *Certain Underwriters at Lloyds of London v. Creagh*, 563 Fed. App'x 209, 211 (3d Cir. 2014) (policy's "microorganism exclusion" precluded coverage for the cost of remediating bacteria that escaped from a decomposed body at the insured's apartment building); *Lambi v. Am. Mut. Ins. Co.*, No. 4:11-cv-906, 2012 WL 2049915, at *4-5 (W.D. Mo. June 6, 2012), *aff'd*, 498 F. App'x 655 (8th Cir. 2013) (communicable disease exclusion in homeowners' policy barred insurance coverage for virus claims); *Sentinel Ins. Co., Ltd. v. Monarch Med. Spa, Inc.*, 105 F. Supp. 3d 464, 472 (E.D. Pa. 2015) (enforcing exclusion of coverage for "[i]njury or damage arising out of or related to the presence of, suspected presence of, or exposure to . . . bacteria" based on showing that Group A Streptococcus is a bacterium); *Alea London Ltd. v. Rudley*, No. Civ.A 03-CV-1575, 2004 WL 1563002, at *3 (E.D. Pa. July 13, 2004) (mold exclusion bars coverage for suit alleging mold contamination).

3:13cv48-WS, 2014 WL 11512199, at *1 (N.D. Fla. Dec. 16, 2014) (pollution exclusion served as absolute bar to losses from sewage backup); *Harris v. Voyager Indem. Ins. Co.*, No. 8:05-cv-2011-T24-TBM, 2007 WL 42854, at *5 (M.D. Fla. Jan. 4, 2007) ("Mold, Mildew and Other Fungi Endorsement" through its unambiguous terms explicitly excludes damage caused directly or indirectly by mold); *Lubell and Rosen LLC, v. Sentinel Ins. Co., Ltd.*, No. 0:16-cv-60429-WPD, 2016 WL 8739330, at *4 (S.D. Fla. June 10, 2016) (plain language of the sewer water exclusion clearly excludes the water damage); *Berg v. N.Y. Life Ins. Co.*, 88 So. 2d 915 (Fla. 1956) (affirming denial of a claim for a death under a life insurance policy where policy contained an exclusionary clause for claims resulting directly or indirectly from illness or disease and insured's arteriosclerosis was factor in death).  This Court likewise should apply the plain terms of the Virus Exclusion and dismiss Plaintiff's virus-related claims.

No Florida court has published an opinion interpreting the Virus Exclusion or an exclusion with substantially the same language.  However, a Michigan appellate court interpreted a nearly identical "'Fungus', Wet Rot, Dry Rot And Bacteria" exclusion to the one at issue here and held that the plain language of the exclusion barred coverage for losses from wet rot.  *Mich. Battery Equip., Inc. v. Emcasco Ins. Co.*, 892 N.W.2d 456, 460 (Mich. Ct. App. 2016).  The court reasoned that "the policy plainly identifies the risks that [the insurer] was willing to, and did contract to cover, and unfortunately for [the insured], wet rot is not one of those risks." *Id*.  This same reasoning applies here—the unambiguous Virus Exclusion bars coverage because "virus" is "not one of [the] risks" that Sentinel agreed to cover, except in limited circumstances not alleged or present here.

That conclusion is in accord with a Michigan trial court ruling from last week addressing coverage for COVID-19 business income claims just like those at issue here.  *Gavrilides Mgmt.*

8

*Co. et al. vs. Michigan Ins. Co.*, Case No. 20-258-CB-C30 (Mich. Circuit Court, Ingham County July 1, 2020. The court in *Gavrilides* concluded that Gavrilides could not demonstrate any direct physical loss to its property but, even if it had, the unambiguous virus exclusion would bar coverage.[6] The *Gavrilides* court expressly rejected arguments that the virus exclusion at issue was vague. The court concluded orally that the exclusion applied because Gavrilides's losses were caused by the virus.

The same is true here. Plaintiff's "COVID-19 related injuries, damages, and losses" are plainly excluded by the Virus Exclusion and the Complaint should be dismissed. *See* Compl. ¶ 31.

### C. The Limited Virus Coverage Does Not Apply

Without any specificity, Plaintiff generally seeks a declaration that the Policy's "Limited Fungi, Bacteria or Virus Coverage" endorsement ("Limited Coverage Endorsement") affords the Plaintiff coverage." Compl. ¶ 44, WHEREFORE clause (e); *id.* ¶ 39. It does not.

The Virus Exclusion is part of the Limited Coverage Endorsement. The Virus Exclusion excludes losses except (1) when the virus results from fire or lightning or (2) when certain limited additional coverage is applicable. *See* Doc. 5, Ex. 1 at 141. There is no allegation that the coronavirus "results from fire or lightning". As to the limited coverage, it "only applies" if

---

[6] Oral Argument and Decision on Motion to Dismiss, *Gavrilides Mgmt. Co. vs. Mich. Ins. Co.*, Case No. 20-258-CB-C30 (Mich. Circuit Court, Ingham County July 1, 2020), *available at* https://www.youtube.com/watch?v=Dsy4pA5NoPw&feature=youtu.be. The court has not yet issued a written order, but the oral argument and decision from the bench were live-streamed and are available at the YouTube link. Sentinel is aware of only one other decision addressing coverage for COVID-19 business interruption claims. While that policy did not involve a virus exclusion, the court concluded there was unlikely to be coverage under a policy requiring "direct physical loss" because "there is no damage to . . . property"; the coronavirus "damages lungs. It doesn't damage printing presses." *See* Doc. 5, Ex. 2, Transcript of Hearing on Mot. for Preliminary Inj., *Social Life Magazine, Inc. v. Sentinel Ins. Co., Ltd.*, No. 20-cv-3311, at 4-5 (S.D.N.Y. May 14, 2020). Thus, even if the Virus Exclusion did not apply here (it does), there would still be no coverage for Plaintiff's claims.

9

the virus "is the result of . . . (1) A 'specified cause of loss' other than fire or lightning; (2) Equipment Breakdown Accident occurs to Equipment Breakdown Property, if Equipment Breakdown applies to the affected premises." Doc. 5, Ex. 1 at 142. "Specified cause of loss" is a defined term under the Policy, which means: "[f]ire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." Doc. 5, Ex. 1 at 60. Plaintiff has not (and cannot) allege the coronavirus is the result of any of these specified causes of loss, nor is it the result of an Equipment Breakdown. Therefore, the exceptions to the Virus Exclusion do not apply.

Indeed, the policy in *Michigan Battery* had a similar limited coverage exception for wet rot that was "the result of (1) 'a specified cause of loss' other than fire or lightning or (2) flood." 892 N.W.2d at 459. The court determined that because the wet rot was not the result of a "specified cause of loss" or flood, the limited coverage provision "simply does not apply." *Id.* The same is true here. There is no coverage for Plaintiff's coronavirus losses. To the contrary, they are expressly excluded.

        **D.**        **Plaintiff's Breach of Contract Claim Fails Because There is No Coverage**

To assert a breach of contract claim under Florida law, a plaintiff must prove by a preponderance of the evidence (1) the existence of a contract, (2) a material breach of the contract, and (3) damages resulting from the breach. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). As detailed above, there is no coverage under the Policy; therefore,

the insurance contract has not been breached, and Plaintiff's first cause of action must be dismissed.[7]

## IV. CONCLUSION

For all of the foregoing reasons and others appearing on the record, Sentinel respectfully requests that this Court dismiss Plaintiff's complaint in its entirety with prejudice. Plaintiff has not stated any claim upon which relief can be granted.

Dated this 8th day of July 2020.

                          Respectfully submitted,

                          BUTLER WEIHMULLER KATZ CRAIG LLP

                          */s/     Troy J. Seibert*
                          Troy J. Seibert
                          Florida Bar No.:  84668
                          Email:  tseibert@butler.legal
                          400 North Ashley Drive, Suite 2300
                          Tampa, FL  33602
                          Telephone:  (813) 594-5811

                          Sarah D. Gordon
                          John J. Kavanagh
                          Caitlin R. Tharp
                          STEPTOE & JOHNSON LLP
                          1330 Connecticut Avenue, NW

---

[7] Even if Plaintiff's claims were not subject to dismissal for lack of coverage (they are), the declaratory relief claim must be dismissed. An action for declaratory judgment should be dismissed where the breach of contract claim will provide complete relief on the issue. *Diatz Fritz Grp, Inc. v. Westfield Ins. Co.*, 2020 WL 2735332 (M.D. Fla. May 26, 2020) (quoting *Eisenberg v. Southern Ins. Co.,* 2009 WL 3667086 at *3 (S.D. Fla. 2009) ("Questions regarding whether a contract was adequately performed [are] unrelated to the purpose behind the Declaratory Judgment Act.")) Moreover, "a court must dismiss a claim for declaratory judgment if it is duplicative of a claim for breach of contract and, in effect, seeks adjudication on the merits of the breach of contract claim." *Ministerio Evangelistico Int'l v. United Specialty Ins. Co.*, 2017 WL 1363344, *1 (S.D. Fla. Apr. 5, 2017); *see also Remedios v. Nat'l Fire & Marine Ins. Co.*, 2019 WL 7956170, at *4 (S.D. Fla. Aug. 29, 2019) (dismissing a declaratory judgment claim that involved the same dispute as the breach of contract claim).

11

        Washington, DC 20036
        Phone: 202-429-8005
        Email: sgordon@steptoe.com
        *Pro Hac Vice Applications Forthcoming*

        *Attorneys for Defendant, Sentinel Insurance Company, Ltd.*

## **CERTIFICATE OF SERVICE**

I certify that a copy hereof has been furnished to:

    Imran Malik
    Malik Law P.A.
    1061 Maitland Center Commons Blvd.
    Maitland, FL 32751
    Email: pleadings@maliklaw.com
    Attorney for Plaintiff

by ECF and e-Service on July 8, 2020.

        /s/    Troy J. Seibert
        Troy J. Seibert