UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**UROGYNECOLOGY SPECIALIST**    CASE NO.: 6:20-cv-1174-Orl-22EJK
**OF FLORIDA LLC,**
      Plaintiff,
vs.
**SENTINEL INSURANCE COMPANY, LTD.,**
      Defendant.
_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW [1]

COMES NOW, The Plaintiff, Urogynecology Specialist of Florida LLC, by and through the undersigned counsel, and hereby files this Response to Defendant's Motion to Dismiss Under Rule 12(b)(6) and Memorandum in Support, and states as follows:

### Procedural Background

1. This is a cause of action stemming from Sentinel Insurance Company, Ltd.'s (herein after sometimes referred to as "Sentinel") denial of Plaintiff's claim submitted on or about March 9, 2020 for losses related to COVID-19.

2. Sentinel received the claim and denied said claim, stating "that since the coronavirus did not cause property damage at your place of business or in the immediate area, this loss is not covered." (Doc. 1-1 at 13).

3. On or about May 22, 2020, Urogynecology Specialist of Florida LLC (henceforth sometimes referred to as Plaintiff) filed its two (2) count Complaint in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, Case No. 2020-CA-5434-O regarding a breach of insurance policy contract and a declaratory action against the Defendant, Sentinel.

---

[1] And request for leave to amend in the event this Honorable Court determines the Plaintiff's complaint as drafted is subject to dismissal.

4. On or about July 1, 2020, Defendant removed this case to this Federal Court, and on July 8, 2020 filed a Motion to Dismiss Under Rule 12(b)(6) (Doc. 6).

5. For all the reasons stated herein Urogynecology Specialist of Florida, LLC's Complaint should not be dismissed and Defendant's Motion to Dismiss should be denied.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

### I.     FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. Sosa v. Coleman, 646 F.2d 991, 993 (5th Cir. 1981). The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the facial sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. Id. It should be read alongside Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim showing that the pleader is entitled to relief. Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

When a complaint is challenged under Rule 12(b)(6), a court will presume that all well-pled allegations are true and view the pleadings in the light most favorable to the plaintiff. Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1066 (11th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. A well-pled complaint survives a motion to dismiss "even if it strikes a savvy judge that actual proof of these

facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556. Platinum Props. Inv'r Network, Inc. v. Sells, 18-61907-CIV-SMITH (S.D Fla. 2020).

## II. **LEGAL FRAMEWORK**

Under the Erie doctrine, "the construction of insurance contracts is governed by substantive state law." Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 412 F.3d 1224, 1227 (11th Cir. 2005). Florida applies the traditional rule of contracts, such that "the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." State Farm Mut. Auto. Ins. Co. v. Roach, 945 So.2d 1160, 1163 (Fla. 2006); *see also* LaTorre v. Conn. Mut. Life Ins. Co., 38 F.3d 538, 540 (11th Cir. 1984) ("Florida adheres to the traditional rule that the legal effects of terms of the insurance policy and rights and obligations of persons insured thereunder are to be determined by the law of the state where the policy was issued.")

Under Florida law, insurance contracts are construed according to their "plain meaning," as understood by the "average person," Berkshire Life Ins. Co. v. Adelberg, 698 So. 2d 828, 830 (Fla. 1997); Taurus Holdings, Inc. v. U.S. Fid. and Guar. Co., 913 So.2d 528, 532 (Fla. 2005). As cautioned by the Supreme Court of Florida, "insurance policies will not be construed to reach an absurd result." Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1140 (Fla. 1996).

## III. **PLAINTIFF HAS PROPERLY PLED A DECLARATORY ACTION THAT HAS THE RIGHT TO BE DETERMINED ON ITS MERITS**

"A complaint for declaratory judgment should not be dismissed if the plaintiff established the existence of a justiciable controversy cognizable under the Declaratory Judgment Act, chapter 86, Florida Statutes. The test for the sufficiency of a complaint for declaratory judgment is not whether the plaintiff will succeed in obtaining the decree he seeks favoring his position, but

3

whether he is entitled to a declaration of rights at all." <u>Murphy v. Bay Colony Prop. Owners Ass'n</u>, 12 So. 3d 924 (Fla. 2nd DCA 2009); <u>Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.</u>, 657 F. Supp. 2d 1279, 1292, (M.D. Fla. 2009); <u>Talcott v. Central Bank & Trust Co.</u>, 220 So. 2d 411, 412-413 (Fla. 3rd DCA 1982).

"The possibility [or even probability] that the proper interpretation of the agreement in question would result in an adverse decree to the plaintiffs does not preclude their rights to a declaratory decree." <u>Id.</u> *See also* <u>Jackson Tom, Inc. v. Carlton</u>, 133 So. 2d 752 (Fla. 1st DCA 1961). "Furthermore, due to its remedial and equitable nature, Florida's declaratory judgment law was intended to be liberally construed by the courts. *See* Fla. Stat. § 86.101. <u>Aznar v. Cooperativa De Seguros Multiples De P.R.</u>, 6:06-cv-578-19-DAB (M.D. Fla. 2006).

In the instant matter, Defendant does not challenge whether Plaintiff has properly pled all elements necessary to maintain a declaratory action under Florida Law, but rather is arguing that the declaratory claim is duplicative of the breach of contract claim, and as such, "the breach of contract claim will provide complete relief on the matter" (Doc 6 at 11 footnote 7). This argument ignores well settled Florida case law and the standard for review of a Declaratory Action under Florida Law cited above. Applying the "failure to state a cause of action standard" under Federal Rule of Civil Procedure 12(b)(6) and dismissing this matter with prejudice would be an improper application of a legal standard. As Defendant has not alleged that Plaintiff's Declaratory Action has failed pled the necessary minimum to maintain a cause of action, and the Defendant is seeking to apply the wrong legal standard to a Motion to Dismiss Plaintiff's Declaratory Action, Defendant's Motion to Dismiss should be denied.

## IV. **PLAINTIFF HAS STATED A VALID BREACH OF CONTRACT ACTION THEREFORE DISMISSAL WITH PREJUDICE IS NOT APPROPRIATE**

### A. **The policy at issue is an all risk policy, and as such affords protections to the insured.**

An "all risks" policy protects against all direct losses except those specifically excluded from the policy; conversely, a "named perils" policy only protects against perils specifically named in the policy. *See* Fisher v. Certain Interested Underwriters at Lloyds Subscribing to Contract No. 242/99, 930 So. 2d 756, 758 (Fla. 4th DCA 2006). Citizens Prop. Ins. Corp. v. Munoz, 158 So. 3d 671, 673, (Fla 2nd 2014). "In Florida, such policies are construed 'to cover all fortuitous losses or damages other than those resulting from willful misconduct or fraudulent acts or which are otherwise expressly and plainly excluded from coverage in the policy itself.'" Key Biscayne Ambassador Condo. Ass'n, Inc. v. Aspen Specialty Ins. Co., No. 16-CV-24564, 2018 WL 1863741, at *7 *citing* Church of Palms-Presbyterian (U.S.A), Inc. v. Cincinnati Ins. Co., 404 F. Supp.2d 1339,1341 (M.D. Fla. 2005).

Generally, an insured seeking coverage pursuant to an "all risks" policy must prove that a loss occurred to the property during the policy period. Hudson v. Prudential Property and Casualty, 450 So. 2d 565 (Fla. 2nd DCA 1984). If the insured meets this initial burden, the burden shifts to the insurer to show that the loss resulted from an excluded cause. Id. **The insured does not need to disprove any excluded causes.** Id. (Emphasis added). Rather, "[p]rovisions that exclude or limit liability of an insurer are construed more strictly than provisions that provide more coverage" Key Biscayne Ambassador Condo. Ass'n, Inc., No. 16-CV-24564, 2018 WL 1863741, at *8. "When dealing with grants of coverage, the courts should interpret the policy language broadly in favor of the existence of insurance, while limitations or exclusions should be interpreted narrowly against the insurer." Id.

5

### B. **Plaintiff plead covered damages and has sufficiently plead relief under the policy at issue.**

The policy at issue here is an "all risk" policy, meaning the policy protects against all direct losses except those specifically excluded. More importantly, the policy itself reads as covering for "risks of direct physical loss." Plaintiff has filed a well pled complaint which properly alleges a claim for damages under the Special Property Coverage Form SS 00 07 07 05 (Doc. 1-1). Specifically, Plaintiff alleges that as "a direct result of this pandemic, Urogynecology Specialist of Florida LLC's property has been damaged and cannot be used for its intended purpose" (Doc 1-1 ¶ 14). Additionally, "Plaintiff's loss of use of the insured property and insured property's inability to function as contemplated and intended by Plaintiff and Defendant is a direct physical loss" (Doc 1-1 ¶ 15). The relevant policy provisions affording coverage are as follows:

> **A. COVERAGE**
> We will pay for direct physical loss of or physical damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause of Loss.
> **3. Covered Causes of Loss**
> RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
> a. Excluded in Section **B., EXCLUSIONS**; or
> b. Limited in Paragraph **A.4.** Limitations; that follow.
> **5. Additional Coverages**
> **o. Business Income**
> (1) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by a direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.
> **p. Extra Expense**
> (1) We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or physical damage to property…
> **q. Civil Authority**
> (1) This insurance is extended to apply to the actual loss of Business Income you sustain when access to your "scheduled

6

    premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your "scheduled premises".
    **6. Coverage Extensions**
      **a. Accounts Receivable**
       (1) You may extend the insurance that applies to your Business Personal Property, to apply to your accounts receivable.
        We will pay for:
         (a) All amounts due from your customers that you are unable to collect;
         (b) Interest charges on any loan required to offset amounts you are unable to collect pending payment of these amounts;
         (c) Collection expenses in excess of your normal collection expenses that are made necessary by the physical loss or physical damage; and
         (d) Other reasonable expenses that you incur to reestablish your records of accounts receivable.

  Prior to this lawsuit being filed, the claim for Business Income coverage was denied due to "no physical loss or damage" and the claim for Civil Authority was denied due to "no information to indicate that a civil authority issued an order as a direct result of a covered cause of loss to property in the immediate area" (Doc. 1-1 at 16). Additionally, Sentinel includes in its denial letter an exclusion for "pollution," which is inapplicable in this instance as there was no "pollution" which entered the "covered property" an exclusion for "consequential losses" and an exclusion for "acts or decisions" which are both inapplicable in this context as will be discussed *infra* (Doc 1-1 at 17-19).

  A reading of the Complaint, taking all well-pled allegations as true and in the light most favorable to the Plaintiff, Plaintiff has pled a covered loss under the policy. Defendant has interpreted the policy in a different manner, to preclude coverage. These two interpretations show ambiguity in the policy, which should be read in favor of coverage. "[P]olicy language is considered to be ambiguous . . . if the language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage." State Farm Mut. Auto.

7

Ins. Co. v. Menendez, 70 So. 3d 566, 570 (Fla. 2011), *quoting* Travelers Indem. Co. v. PCR Inc., 889 So. 2d 779, 785 (Fla. 2004). Ambiguity is construed against the insurance carrier and in favor of coverage for the insured. Id.

Further, damages alleged in Plaintiff's Complaint are not excluded under the policy. The policy is an all risk policy, meaning all types of losses are covered unless specifically excluded or limited. The policy itself does not specifically exclude COVID-19 related claims, or otherwise generally exclude claims caused by global pandemic events. In fact, the Defendant denied the claim stating "that since the coronavirus did not cause property damage at your place of business on in the immediate area, this loss is not covered" (Doc 1-1 at 13). When reading the complaint taking all reasonable inferences and well pled facts in the light most favorable to the Plaintiff, and taking into account the ambiguities in the insurance policy under the circumstances laid out in the Plaintiff's Complaint, Plaintiff has pled that the loss of usefulness and functionality of its property is a direct physical loss sustained during the policy period and that the loss is a direct result of Governor DeSantis' order. As such, Plaintiff has pled a cause of action and Defendant's Motion to Dismiss should be denied. [2]

Courts are split as to what constitutes "physical damage" to trigger coverage under insurance contracts. "Several courts have held that 'physical loss' occurs when property becomes 'uninhabitable' or substantially 'unusable'" Mama Jo's Inc. v. Sparta Ins. Co., 2018 U.S. Dist. LEXIS 22628, *24 (S.D. Fla. 2018) *citing* Port Auth. Of New York & New Jersey v. Affiliated FM Ins. Co., 311 F. 3d 226, 236 (3d Cir. 2002). *See also* Murray v. State Farm Fire & Cas. Co., 509 S.e.2d 1, 17 (W. Va. 1998) (Direct physical loss may exist in the absence of structural damage to the insured property.") Travco Ins. Co. v. Ward, 715 F. Supp. 2d 699 (E.D. Va. 2010)

---

[2] If the Court deems dismissal is appropriate Plaintiff requests leave to amend.

("[P]hysical damage to the property is not necessary when 'the building in question has been rendered unusable by physical forces.'") Gregory Packaging, Inc. v. Travelers Prop. Cas. Co., Civ. No. 2:12-cv-04418 (WHW)(CLW), 2014 U.S. Dist. LEXIS 165232 (D.N.J. 2014)("While structural alteration provides the most obvious sign of physical damage… property can sustain physical loss or damage without experiencing structural alteration.") Alternatively, courts have held "[a] direct physical loss 'contemplates an actual change in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so'" Mama Jo's Inc. v. Sparta Ins. Co., 2018 U.S. Dist. LEXIS 22628, *24 (S.D. Fla. 2018) *citing* MRI Healthcare Ctr. Of Glendale, Inc. v. State Farm Gen. Ins Co., 187 Cal. App. 4th 766, 779, 115 Cal. Rptr. 3d 27 (2010).

"An all-risk policy provides 'a special type of coverage extending to risks not usually covered under other insurance' and coverage is available for all loss not resulting from the insured's wilful misconduct or fraud unless the policy contains 'a specific provision expressly excluding the loss from coverage" Wallach v. Rosenberg, 527 So. 2d 1386, 1388 (Fla. 3d DCA 1988) *quoting* Phoenix Ins. Co. v. Branch, 234 So. 2d 396, 398 (Fla 4th DCA 1970). In this case, Sentinel issued to Plaintiff an all risk policy. Therefore, Plaintiff's burden is to prove that a loss happened during the policy period, which they have alleged in the complaint. Specifically, Plaintiff alleges that, "[d]uring the policy period, Plaintiff sustained a direct physical loss to its covered property from a covered cause of loss. Plaintiff also sustained a loss of Business Income, Extra Expense, Extended Business Income, and Accounts Receivable, in addition to other losses and damages" (Doc. 1-1 ¶ 19). "Once the insured established a loss that appears to be within the terms of the all-risk policy, the burden is on the insurer to prove that the loss was caused by an

9

excluded risk." Id. Citing Hudson v. Prudential Property & Casualty Ins. Co., 450 So. 2d 565, 568 (Fla. 2d DCA 1984).

When reading the complaint taking all reasonable inferences and well pled facts in the light most favorable to the Plaintiff, and taking into account the ambiguities in the insurance policy under the circumstances laid out in the Plaintiff's Complaint, Plaintiff has pled that the loss of usefulness and functionality of its property is a direct physical loss at its location which resulted in damages. Taking these allegations in conjunction with Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief," Plaintiff has adequately pled damages and has met its burden by pleading a well pled complaint alleging (1) a covered loss (2) breach of contract based on that covered loss, and (3) an action seeking declarations regarding the loss subject to the complaint, and as such, Defendant's Motion to Dismiss should be denied. [3] [4]

### C. **Florida law construes ambiguities in insurance policies against the carrier.**

The Florida Supreme Court has held many times, that where the provisions of an insurance policy are at issue, any ambiguity must be liberally construed in favor of coverage and strictly against the insurer. Wash. Nat'l Ins. Corp. v. Ruderman, 117 So. 3d 943, 949-950 (Fla. 2013); *See, also,* Menendez, 70 So. 3d 566, 570 (Fla. 2011); US Fire Ins. Co. v. J.S.U.B., Inc., 979 So. 2d 871, 877 (Fla. 2007); Garcia v. Fed. Ins. Co., 969 So. 2d 288, 291 (Fla. 2007); Fayad v. Clarendon Nat. Inc. Co., 899 So. 2d 1082, 1086 (Fla. 2005); Swire Pacific Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003); State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So. 2d 1072, 1076 (Fla. 1998); Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So. 2d 467,

---

[3] Defendant does not seem to be challenging Plaintiff's pleading of Count I – Breach of Contract and Count II – Declaratory Judgement, but rather arguing there is no coverage under the policy.
[4] Plaintiff requests leave to amend in the event the Court finds the Plaintiff's Complaint to be subject to dismissal.

470 (Fla. 1993); Deni Assocs. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135, 1138 (Fla. 1998); State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So. 2d 1245, 1248 (Fla. 1986). Under Florida law, a contract is deemed to be ambiguous "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [sic] another limiting coverage, the insurance policy is considered ambiguous." Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). In searching for meaning in an insurance contract under Florida law "courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." Id. Ruderman v. Wash. Nat'l Ins. Corp., 671 F.3d 1208, 2012 (11th Cir. 2012). However, when a contract contains an ambiguity, Florida law dictates that a court resolve the ambiguity against the drafter of the contract. Da Costa v. Gen. Guar. Ins. Co., 226 So. 2d 104, 105 (Fla. 1969).

As shown *supra*, under the circumstances alleged in the complaint, the policy is ambiguous. Hence, the Plaintiff not only filed a breach of contract action, but also filed a declarations actions, requesting the Court to declare the Plaintiff's rights and responsibilities under the policy under these circumstances.

      **D.**      **The Exclusions cited in Sentinel's denial letter are not applicable to the loss.**

As previously discussed, the policy at issue here is an "all risk" policy, meaning coverage is afforded to the insured unless specifically excluded. Plaintiff submitted its claim to the Defendant due to its property being damaged as a result of COVID-19 causing Plaintiff's inability to use its property for the intended function as contemplated between the insured and the insurer. After Plaintiff submitted its claim to Defendant, its claim was denied. As a part of the denial letter, Defendant points towards the "pollution" exclusion, an exclusion for "consequential damages", and an exclusion for "acts or decisions" (Doc 1-1 at 17-19). The relevant portion of the policy

11

exclusions are as follows:

> **B.   EXCLUSIONS**
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>    i. **Pollution:** We will not pay for loss or damage caused by or resulting from discharge, dispersal, seepage, migration, release or escape of "pollutants and contaminants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if physical loss or physical damage by the "specified causes of loss" results, we will pay for the resulting physical loss or physical damage caused by the "specified cause of loss.
> 2. We will not pay for physical loss or physical damage caused by or resulting from
>    a. **Consequential Losses:** Delay, loss of use or loss of market.
> 3. We will not pay for loss or damage caused by or resulting from any of the following. But if physical loss or physical damage from Covered Cause of Loss results, we will pay for that resulting physical loss or physical damage.
>    b. **Acts or Decisions:** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.
>
> **G.   PROPERTY DEFINITIONS**
> **15.** "Pollutants and Contaminants" means any solid, liquid gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste, or any other material which causes or threatens to cause physical loss, physical damage, impurity to property, unwholesomeness, undesirability, loss of market, loss of use of property, or which threatens human health or welfare. Waste includes materials to be recycled, reconditioned or reclaimed.

As stated, Plaintiff submitted its claim to Defendant for damages due to COVID-19. COVID-19 was declared a pandemic by The World Health Organization.[5] According to the Center for Disease Control, COVID-19 is a virus.[6] Therefore, COVID-19 being a virus, as defined,

---

[5] According to the Merriam-Webster dictionary, a "pandemic" is defined as "an outbreak of a disease that occurs over a wide geographic area and affects an exceptionally high proportion of the population" pandemic. *2020. In Merriam-Webster.com*. Retrieved July 31, 2020 from https://www.merriam-webster.com/dictionary/pandemic.
[6] "virus" as defined by the Merriam-Webster dictionary is: Any of a large group of submicroscopic infectious agents that are usually regarded as nonliving extremely complex molecules, that typically contain a protein coat surrounding an RNA or DNA core of genetic material but no semipermeable membrane, that are capable of growth and multiplication only in living cells, and that cause various important diseases in humans, animals, and plants. *virus. 2020. In Merriam-Webster.com*. Retrieved July 31, 2020 https://www.merriam-webster.com/dictionary/virus.

precludes it from being considered a pollutant. Further, since Sentinel created a separate endorsement which specifically discusses viruses as shown *infra*, a virus was never contemplated to be considered a pollutant according to the plain terms of the insurance policy.

Additionally, Plaintiff alleges physical loss due to its inability to function as contemplated and intended by the Plaintiff and Defendant when entering into the policy of insurance, and that the inability to function as intended is a direct physical loss (*See* Doc 1-1 ¶ 15). As alleged in the complaint, the consequential losses exclusion does not apply.

Further, the exclusion for acts or decisions does not apply to the facts at hand. According to the policy, the exclusion does not apply if physical loss or physical damage results from a covered cause of loss, and as shown *supra*, Civil Authority is a covered cause of loss under the policy. Due to Governor DeSantis' order limiting "non-essential" medical and surgical procedures, access to the insured premises was specifically prohibited and the functionality of the business was impaired as to cause a physical loss to the business. *See* Mama Jo's Inc., 2018 U.S. Dist. LEXIS 22628, *24; Port Auth. Of New York & New Jersey, 311 F. 3d 226, 236; Murray v. State Farm Fire & Cas. Co., 509 S.E.2d 1, 17 (W. Va. 1998); Travco Ins. Co. v. Ward, 715 F. Supp. 2d 699 (E.D. Va. 2010); Gregory Packaging, Inc. v. Travelers Prop. Cas. Co., Civ. No. 2:12-cv-04418 (WHW)(CLW), 2014 U.S. Dist. LEXIS 165232 (D.N.J. 2014)

### E.  The virus exclusion does not apply.

Now that suit has been initiated, the Defendant seeks to deny the Plaintiff's claim for COVID-19 related damages due to the Limited Fungi, Bacteria or Virus Coverage form SS 40 93 07 05. The pertinent portions of that endorsement are:

> 2. The following exclusion is added to Paragraph **B.1**. Exclusions of the standard Property Coverage Form and the Special Property Coverage Form;
>    **i.      "Fungi", Wet Rot, Dry Rot, Bacteria and Virus**

13

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other causes or event that contributes concurrently or in any sequence to the loss:
> (1) **Presence, growth, proliferation, spread or any activity** of "fungi", wet rot, dry rot, bacteria or virus.
> (2) But if "fungi", wet rot, dry rot, bacteria or virus results in a "specified cause of loss" to Covered Property, we will pay for the loss or damage caused by that "specified cause of loss". (Emphasis added).

The Policy's Exclusions are not applicable under the circumstances giving rise to this cause of action. Taking the exclusion as a whole and by its plain meaning, the exclusion is intended to apply when "fungi", wet rot, dry rot, bacteria and virus are **physically present on the property itself**. To extend the exclusion to include mere contemplation of, or presence somewhere in the world of, COVID-19 goes beyond the scope of the insurance contract.

Plaintiff's cause of action is due to limiting its business, and therefore suffering a direct loss due to Governor DeSantis' Executive Order limiting "non-essential" and elective medical and surgical procedures in an effort to help stop the spread of COVID-19 throughout the state of Florida. Plaintiff's cause of action was never due to having to close its doors because COVID-19 was ever present on its premises. As the Defendant points out in its own motion, "Plaintiff claims that it has suffered a direct physical loss when it was forced to limit its services in an effort to help stop the spread of COVID-19 and due to governmental orders that were issued as a result of COVID-19"(*See* Doc 6 at 6) also (*See* Doc. 1-1 ¶ 32¶ 42). Nowhere in Plaintiff's complaint does Plaintiff claim, state, or even infer that it has suffered a loss due to the virus being present on its property. To extend this exclusion beyond Plaintiff's property is to extend the exclusion beyond the scope of the insurance policy.

Defendant attempts to point towards many cases where courts "do not hesitate to enforce policy provisions excluding coverage for viruses;" and cites multiple cases in where

coverage has been excluded (*See* Doc. 6 at 7). However, **all** these cases deal with the **presence** of the excluded material **being found on or within** the insured premises (*See* Doc. 6 at 7 footnote 5). Defendant's reliance on these cases is misplaced. As previously discussed, this is not a case where the alleged damages are costs of remediation, liability, or even exposure to the virus, but rather the damages were caused in an effort to "help stop the spread" of COVID-19. **Plaintiff's property was forced to limit its functions and cannot be used for its intended purpose.** Just as in <u>Clarke v. State Farm Florida Insurance</u>, where the "plaintiff's claims fell outside the plain language that defined the scope of the policy's coverage" 123 So. 3d 583, 584 (Fla. 4th DCA 2012), here, Defendant attempts to exclude coverage for a virus that **was never within the insured premises** and goes beyond the defined scope of the policy.

When all well-pled allegations are read as true and a viewing of the pleadings is in the light most favorable to the Plaintiff, it is clear that Plaintiff has pled a covered loss under the policy. Plaintiff clearly alleges the proximate cause/origin of its loss is not due to COVID-19 ever being present on its property, but rather its damages were caused due to a direct effect of Governor DeSantis' order. Plaintiff has alleged all damages were the direct result of its business operations being limited and being unable to function as contemplated and intended by the Plaintiff and Defendant when entering into the policy of insurance (*See* Doc 1-1 ¶ 15). As such, Plaintiff has met its burden, and the Defendant's Motion to Dismiss should be denied.

## V. DEFENDANT IS NOW TRYING TO CHANGE ITS LEGAL POSITION ON A MOTION TO DISMISS

The "Mend the Hold" doctrine was utilized by the United States Supreme Court in 1877 and is a doctrine which prevents an insurance company from raising any reason not contained within the pre-suit claim denial letter as a defense in a litigation. *See* <u>Railway Co. V. McCarthy</u>, 258, 266 (1877). It is the name of a common law doctrine that limits the right of a party to a

contract lawsuit to change its litigating position. The phrase is a nineteenth century wrestling term, meaning to get a better grip (hold) on your opponent. The first case to use the term and spell out the doctrine was Railway Co. v. McCarthy, 96 U.S. 258, 6 Otto 258, 24 L.Ed. 693 (1877), although the spirit of the doctrine can be found in much earlier cases. *See* Wright v. Reed, 3 D. E. 554, 100 Eng. Rep. 729 (K.B. 1790); Gould v. Banks Gould, 8 Wend. 561, 566 (S.Ct. of N.Y. 1832); Everett v. Saltus, 15 Wend. 474, 478 (S.Ct. of N.Y. 1836); Holbrook v. Wight, 24 Wend. 169, 180 (S.Ct. of N.Y. 1840).

Railway Co. v. McCarthy was a breach of contract lawsuit. The railroad company tried to prove that it could not make the shipment required by the contract because it lacked the necessary rail cars. After the close of the evidence, the railroad suggested for the first time that the reason it could not make the shipment was that to do so would have violated the state's Sunday-closing law. 96 U.S. at 260, 265, 267. The Court refused to consider this "after-thought," stating that **"where a party gives a reason for his conduct and decision touching any thing involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold."** Id. at 267-68. Harbor Ins. Co. v. Continental Bank Corp., 922 F.2d 357, 362-67 (7th Cir. 1990) (Emphasis Added).

Other states have utilized the "mend the hold doctrine". "Sometimes it is treated as a pure principle of procedure, as in Butts v. Georgia Casualty Surety Co., 179 Ga. App. 819, 821, 348 S.E.2d 94, 96 (1986), sometimes, as a substantive doctrine especially applicable to insurance companies that change its reason for refusing to pay a claim, as in Hamlin v. Mutual Life Ins. Co., 145 Vt. 264, 268-69, 487 A.2d 159, 162 (1984), and Cornhusker Agricultural Ass'n, Inc. v.

16

Equitable General Ins. Co., 223 Neb. 618, 628, 392 N.W.2d 366, 373 (1986). Harbor Ins. Co., 922 F.2d at 365.

The doctrine "can be seen as a corollary of the duty of good faith that the law of Illinois as of other states imposes on the parties to contracts." AMPAT/Midwest, Inc. v. Illinois Tool Works Inc., 896 F.2d 1035, 1041 (7th Cir. 1990); Harrison v. Sears, Roebuck Co., 189 Ill. App.3d 980, 991, 137 Ill.Dec. 494, 501, 546 N.E.2d 248, 255 (1989); 2 Farnsworth on Contracts § 7.17, at pp. 310-13 (1990). A party who hokes up a phony defense to the performance of his contractual duties, and then when that defense fails (at some expense to the other party) tries on another defense for size, can properly be said to be acting in bad faith. Harbor, 922 F.2d at 366. *See also* Salcedo v. Asociacion Cubana, 368 So. 2d 1337, 1339 (Fla. 3rd DCA 1979) ("In earlier times, the rule we apply in this case was said to reflect the feeling that a party may not "mend his hold") Ohio & M. R. Co. v. McCarthy, 96 U.S. 258, 268, (1878), or ("blow hot and cold at the same time" or "have his cake and eat it too").

Florida Equitable Estoppel is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position. "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which perhaps have otherwise existed, either of property or of contract, or of remedy, as against another person, who has in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, or of contract or of remedy" Major League Baseball v. Morsani, 790 So. 2d 1071, 1076 (Fla. 2001).

Florida has released a string of cases where the courts do not allow the practice of the "Catch-22" or "gotcha!" school of litigation to succeed.". *See* Holyoke Mutual Insurance

17

Company in Salem v. Concrete Equipment, Inc., 394 So.2d 193 (Fla. 3d DCA 1981); State v. Anders, 388 So.2d 308 (Fla. 3d DCA 1980); State v. Belien, 379 So.2d 446 (Fla. 3d DCA 1980); Salcedo v. Asociacion Cubana, Inc., 368 So.2d 1337 (Fla. 3d DCA 1979). *See also* Achin v. State, 387 So.2d 375 (Fla. 4th DCA 1980); In re Estate of Osborn, 383 So.2d 1107 (Fla. 4th DCA 1980). Heimer v. Travelers Ins. Co., 400 So. 2d 771, 772, (Fla. 3rd DCA1981).

In Am. Ins. Co of Newark v. Burson, 213 F.2s 487, 490 (5th Cir. 1954) the Court once again held the Defendant insurance company to its pre-suit denial letter and applied the principles of the Mend the Hold doctrine without specifically stating the name when the Defendant attempted to raise a defense of no proof of loss being submitted. "However this may be, and though the testimony convinces us that appellant had actual knowledge of the loss within a reasonable time, nevertheless, in view of further testimony by Dodge that appellant denied liability for the loss on the ground that it was 'an embezzlement instead of a theft', we think the record fairly supports the trial court's conclusion that the general denial of liability by the defendant constituted a waiver of any failure on the part of the plaintiff to promptly notify the defendant of the loss, or to file a proper proof of loss." Id. The Court relied on the essential "Mend the Hold" doctrine (1) the pre-suit reason behind the denial of the claim, (2) the change in litigation position, and (3) the availability of information to the insurance carrier at the time of the denial. *See also* Bituminous Cas. Corp. v. Oceano Towing Co., 197 F.2d 210, 211, (5th Cir 1952) ("Having placed its denial of liability solely upon lack of coverage, the insurance company should not be heard, several months later, to deny coverage upon a different ground."); Balough v. Jeweler's Mutual Insurance, 67 F. Supp. 763 (S.D. Fla. 1958)( "the unconditional denial of liability within the period allowed by the policy for the filing of proof of loss constitutes a waiver of the requirement.")

In <u>Trans Ocean Container Corporation v. Yorkshire Insurance Company</u>, the Court also prevented the Defendant insurance carrier from taking a position inconsistent with its denial letter. 81. F. Supp 2d, 1340 (S.D. Fla. 1999). In that case, Yorkshire had issued a denial letter with four specific enumerated reasons for the denial of the insurance claim. <u>Id.</u> at 1346-47. Yorkshire attempted to change its legal defenses to additional defenses contained outside the denial letter, to which the court opined

> [i]t is again the Court's conclusion that it was that it was Underwriters' intent to waive certain defenses that had not been asserted in the denial of coverage. However, the Court recognizes that without sufficient information, a defendant cannot be held knowingly to have waived a particular defense in an initial denial of coverage. In other words, if an insurer recognizes the applicability of a particular defense based upon evidence uncovered subsequent to an initial denial of coverage, that insurer should not be precluded from using such a defense on the theory that the defense was waived in the initial denial of coverage--particularly where there is no evidence to indicate that an insured relied upon a waiver to its detriment. Thus, the Court must determine whether Underwriters had sufficient information at the time of the initial denial of coverage to have waived the additional defenses presented. <u>Id.</u>

The Court utilized the essential elements of the "Mend the Hold" doctrine (1) the pre-suit reason behind the denial of the claim, (2) the change in litigation position, and (3) the availability of information to the insurance carrier at the time of the denial, and also merged waiver elements into the doctrine in the form of waiving defenses the insurance company had sufficient notice of.

Like the cases cited above, here the Defendant is trying to change its position as to its reasoning why there is no coverage under the policy. While the denial letter issued by the Defendant lists out the various types of coverages and potential exclusions under the policy, its reason for denying the claim was after

> [w]e have completed a review of your loss and have determined that since the coronavirus did not cause property damage at your place of business or in the immediate area, this loss if not covered (*See* Doc. 1-1 at 14).

19

Plaintiff initiated its claim with Defendant, on or about March 9, 2020, due to "Plaintiff's loss of use of the insured property and insured property's inability to function as contemplated and intended by Plaintiff and Defendant" causing a "direct physical loss" to the property (*See* Doc. 1-1 ¶ 15). Defendant is only now, after suit has been filed, citing the "virus exclusion" as a reason to dismiss this lawsuit with prejudice in an attempt to justify its improper denial of the insurance claim in question. The Defendant should not be able to improperly investigate the claim and apply non applicable policy language as a basis for denial before a lawsuit is filed, then justify its denial on different reasons after a lawsuit is filed. [7]

This Honorable Court should abide by binding United States Supreme Court precedent, and its progeny in denying the Defendant's Motion to Dismiss as an impermissible attempt to change positions after giving a previous reason for breaching a contract.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 5, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the parties.

/s/ Imran Malik, Esq.
Imran Malik, Esquire
Malik Law, P.A.
Florida Bar Number: 0041501
1061 Maitland Center Commons Blvd.
Maitland, FL 32751
Phone:  (407) 500 1000
Email: pleadings@imaliklaw.com

---

[7] No additional information was provided to Defendant which would have allowed it to re-evaluate the claim and change its coverage determination following the Defendant's denial of the claim.